2020 FEB 18 PM 4: 11

FILED

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

          Plaintiff,

          v.

STEVE CHEN,
   aka "Li Chen,"
   aka "Boss,"

          Defendant.

Case No. **20CR00089_JFW**

I N F O R M A T I O N

[18 U.S.C. § 371: Conspiracy; 26
U.S.C. § 7201: Tax Evasion]

The United States Attorney charges:

COUNT ONE

[18 U.S.C. § 371]

A.   INTRODUCTORY ALLEGATIONS

    At times relevant to this Information:

    1.   Defendant STEVE CHEN, also known as ("aka") "Li Chen" and
"Boss," was a resident of Arcadia and, later, Bradbury, in Los
Angeles County, within the Central District of California.

    2.   Defendant CHEN was the owner, President, and Chief
Executive Officer ("CEO") of USFIA, Inc., aka "US Fine Investment
Arts," a California corporation with its headquarters at 135 East
Live Oak Boulevard, Arcadia, California (the "USFIA Arcadia Office"),

within the Central District of California.  Defendant CHEN was CEO of, owned interests in, and controlled the following entities, which also used the USFIA Arcadia Office as their business address:

        a.    Alliance Financial Group, Inc., a Delaware corporation ("AFG");

        b.    US-China Consultation Association/Liaison Consulting Services, a California corporation ("UCCA");

        c.    Amkey, Inc., a California corporation ("Amkey");

        d.    Amauction, Inc., a California corporation ("Amauction"); and

        e.    Ahome Real Estate LLC, a California limited liability company ("Ahome").

3.    Defendant CHEN was the controlling shareholder and a director of USFIA Singapore PTE. LTD., a limited exempt private company located in Singapore ("USFIA Singapore").

4.    Defendant CHEN controlled bank accounts in the names of USFIA, AFG, UCCA, Amkey, Amauction, and Ahome that were maintained at a Bank of America branch office within the Central District of California, including a USFIA checking account ("USFIA BoA Account") and an Ahome checking account (the "Ahome BoA Account").

5.    Defendant CHEN, together with other co-conspirators known and unknown to the United States Attorney, fraudulently promoted and solicited investments in USFIA, within the Central District of California and elsewhere, in order to obtain approximately $147 million from more than 70,000 victim investors.

B.    OBJECT OF THE CONSPIRACY

6.    Beginning by at least in or about July 2013, and continuing through at least in or about September 2015, in Los Angeles County,

1   within the Central District of California, and elsewhere, defendant

2   CHEN, together with others known and unknown to the United States

3   Attorney, knowingly conspired to commit wire fraud, in violation of

4   Title 18, United States Code, Section 1343.

5   C.   MANNER AND MEANS OF THE CONSPIRACY

6          7.   The object of the conspiracy was carried out, and to be

7   carried out, in substance, as follows:

8          a.   Defendant CHEN, together with other co-conspirators

9   known and unknown to the United States Attorney, would solicit and

10  obtain investments in USFIA from victim investors by falsely

11  representing, and causing others to falsely represent to those victim

12  investors, that:

13               i.   USFIA, under defendant CHEN's leadership, was a

14  very successful multinational business, headquartered in Arcadia,

15  California, that specialized in gemstone mining, processing, jewelry

16  design and manufacturing, and sales.  USFIA's amber and other

17  gemstones were extracted from mines owned by USFIA located in the

18  Dominican Republic, Argentina, Mexico, and the United States.  USFIA

19  was able to increase the market price for precious amber because of

20  USFIA's extensive amber mine holdings in the Dominican Republic.

21               ii.  USFIA was a subsidiary of AFG.  AFG, under

22  defendant CHEN's leadership, was a very successful multinational

23  private equity investment company.  AFG profitably invested in, among

24  other things, real estate development, mining, biotechnologies,

25  aeronautical supplies, and telecommunications.  AFG had more than $50

26  billion in assets, branch offices in over 18 countries, and more than

27  2,000 full-time employees.  AFG had 3,000 jewelry franchises, with

28

1 over two million customers worldwide.  AFG provided its expertise and
2 financial support to USFIA.

3          iii.     USFIA was sponsored and supported by UCCA.
4 Defendant CHEN was Vice Chairman of UCCA.  UCCA was an organization
5 formed by elite Chinese and United States leaders, including ten
6 members of the United States Congress, to facilitate political and
7 economic communication and relations between China and the United
8 States.

9          iv.     Defendant CHEN was the founder of China Unicom, a
10 leading Chinese telecommunications company.  Under defendant CHEN's
11 leadership, China Unicom's business grew dramatically and culminated
12 in an initial public stock offering ("IPO") for China Unicom that
13 raised $5.7 billion.  Defendant CHEN would use his expertise to
14 launch a USFIA IPO to generate substantial profits for USFIA
15 shareholders.

16          v.     Investments in USFIA were made through purchases
17 of "packages," generally priced between $1,000 and $30,000 each,
18 comprised of a quantity of amber or other precious gemstones,
19 sometimes set in jewelry, and a quantity of USFIA "points," also
20 called "units" ("Investment Packages").  Because the gemstones came
21 from USFIA's own mines and processing operations, the prices for
22 Investment Packages were much less than retail market prices for the
23 gemstones included in the Investment Packages.  Investors were
24 obtaining their gemstones from USFIA at wholesale prices and would be
25 able to resell them at retail for substantial profit.

26          vi.     USFIA points held by investors could be converted
27 to USFIA stock shares when USFIA had its IPO in the near future,
28 which would result in substantial profits for USFIA shareholders.

4

1          vii.    Investors would receive passive returns on their

2    Investment Packages.  USFIA would provide investors monthly

3    distributions calculated as a percentage of profits based on USFIA's

4    global business performance.

5          viii.    Investors would receive a quantity of points

6    equal in value to the price of the gemstones purchased in their

7    Investment Packages, and the value of the points would increase as

8    USFIA mined and sold more gemstones.

9          ix.    Investors would receive additional bonuses from

10   USFIA for recruiting other investors to purchase Investment Packages,

11   in accordance with USFIA's multi-level marketing program.  Such

12   bonuses included cash, travel, luxury automobiles, homes in the Los

13   Angeles area, and EB-5 visas for immigrant investors.  Investors were

14   referred to as USFIA "Members," and USFIA Members who recruited other

15   investors to purchase Investment Packages were referred to as USFIA

16   "Distributors."  Distributors could receive substantial bonuses based

17   on sales of Investment Packages by other Distributors whom they have

18   recruited, who were known as their "downlines."

19         b.    Starting in or about September 2014, defendant CHEN,

20   together with other co-conspirators known and unknown to the United

21   States Attorney, would modify their promotion of Investment Packages

22   by substituting quantities of "Gem Coins" instead of points, and

23   would solicit and obtain investments in USFIA from victims by falsely

24   representing, and causing others to falsely represent to those

25   victims that:

26         i.    Gem Coins were a digital currency issued by USFIA

27   and financially supported by AFG.  Gem Coins could be used for

28   electronic currency transfer, trading, and exchange services,

including exchanging Gem Coins for United States Dollar ("USD")
currency.

          ii.   Gem Coins had a wide circulation throughout the
world, with the majority circulated among the jewelry and finance
industries.

          iii.   USFIA had registered as a Money Services Business
("MSB") with the federal government, which allowed USFIA to lawfully
provide currency transmittal and exchange services using Gem Coins in
the United States.  Gem Coins also had legal protection from the
State of California for use as lawful currency.

          iv.   Investors could convert their Gem Coins into USD
currency at designated automated teller machines ("ATMs"), such as
the two ATMs located at the USFIA Arcadia Office and thousands more
ATMs throughout the world that USFIA was integrating into the Gem
Coin financial system.  Investors were issued Gem Coin Global Cash
Cards that they could use to convert their bonuses and Gem Coins into
USD currency.

          v.   Gem Coins had intrinsic value because they were
supported by rare, precious gemstones and backed by AFG's assets,
which exceeded $50 billion.  Because Gem Coins were asset-backed,
they could never lose their value.

          vi.   To ensure that Gem Coins were asset-backed, USFIA
would deposit gemstones with the United States government as
collateral.  UFIA would also submit gemstones worth $15 billion to an
independent auditing firm to confirm their value.  Bins delivered
under armed guard and stored at the USFIA Arcadia Office, stacked
beneath a large banner reading "GEM COIN BACKED BY REAL ASSETS OUR

1  PRECIOUS GEMSTONE," as shown in photographs included in USFIA
2  promotional materials, held a portion of these assets.

3           vii.   Gem Coin could be used as a form of payment
4  accepted by numerous well-known merchants online and in stores.  To
5  increase usage of Gem Coin, USFIA had created an e-commerce platform
6  called "Happy City," from which brand name merchandise could be
7  purchased online using Gem Coins.

8           viii.   Investors would receive an amount of Gem Coins
9  equal in value to the price of the gemstones purchased in their
10  Investment Packages.  The value of Gem Coins would increase with
11  USFIA's gemstone sales.  The USD value of each Gem Coin was $.05 when
12  initially issued by USFIA in September 2014, and had increased every
13  day thereafter.  For example, USFIA reported to investors that the
14  value of each Gem Coin had increased to $.10 by November 8, 2014, and
15  to $.20 by April 8, 2015.

16           ix.   Investors could trade their USFIA points and,
17  later, Gem Coins, for USD currency on trading platforms provided by
18  USFIA for Members, to liquidate their USFIA investments for profit.

19           x.   USFIA had more than 20 million active members.

20           c.   In soliciting and obtaining investments in USFIA from
21  victim investors, defendant CHEN and other co-conspirators would fail
22  to disclose to, and would conceal from, those investors the following
23  material facts, among others:

24           i.   USFIA did not own or operate any mines, in the
25  Dominican Republic or elsewhere, and could not increase the market
26  price for amber.  USFIA did not generate any significant revenue from
27  its business operations, apart from sales of Investment Packages to

28

1   victim investors, and had virtually no product sales to retail

2   customers.

3           ii.   AFG did not own or operate any mines anywhere,

4   and did not develop any jewelry franchises.  AFG had no employees.

5   AFG had no significant business operations anywhere, apart from

6   promoting investments in USFIA.  AFG's assets primarily consisted of

7   vacant land in San Bernardino County, California, worth less than

8   $1.3 million.  None of AFG's assets were pledged or committed to

9   serve as collateral or provide any asset value for Gem Coins.

10           iii.   UCCA was a sham, formed and operated by defendant

11   CHEN and his co-conspirators without the involvement or endorsement

12   of any members of the United States Congress or any government

13   officials of China.  UCCA had no economic or political significance.

14           iv.   Defendant had no involvement in China Unicom's

15   IPO.  Defendant CHEN never intended for USFIA to have an IPO or to

16   otherwise reduce his 100% ownership of USFIA.  Defendant CHEN never

17   took any steps to register or prepare USFIA to have an IPO.

18           v.   Amber and other gemstones and jewelry products

19   provided in Investment Packages, including those displayed in a

20   jewelry showroom at the USFIA Arcadia Office, were obtained from

21   various domestic and foreign commercial suppliers, rather than mined

22   by USFIA or AFG.  These items were assigned grossly inflated prices,

23   substantially in excess of wholesale or retail prices for comparable

24   items, and were worth much less than what investors paid USFIA for

25   them.  As a result, investors generally were unable to resell their

26   gemstones or jewelry for any profit.

27           vi.   The points and, later, Gem Coins that investors

28   received from USFIA did not and would not increase in value, as a

return on investment, because the points and Gem Coins had no economic value.  The constant increases in the USD currency values attributed to points and Gem Coins, as reported to investors online in their individual USFIA accounts and in USFIA promotional materials, were reported at defendant CHEN's direction and regardless of any gemstone sales, market conditions, or other external factors.

vii.   The funds used to make distributions to investors, whether denominated as dividends, commissions, awards, or bonuses, primarily came from new investors' payments to purchase Investment Packages.

viii.   The primary focus of USFIA's business was soliciting new investors and paying Distributors bonuses for recruiting other investors, rather than selling USFIA products to retail customers.  The vast majority of investors, especially the ones who joined USFIA more recently, were destined to lose money.

ix.   Gem Coins had no circulation or use in the jewelry industry, finance industry, or any other industry.  No merchants accepted Gem Coins as a form of payment.  Investors could not use Gem Coins to make purchases on USFIA's Happy City website, because the website was non-functional.

x.   USFIA had no ATMs in service anywhere to process Gem Coin transactions.  Neither of the two ATMs at USFIA's Arcadia office nor the Gem Coin Global Cash Cards issued to investors were functional.

xi.   USFIA was not authorized to operate a currency exchange or currency transmittal business in the United States. USFIA never registered as an MSB, and the purported MSB registration form for USFIA shown to investors in promotional materials was fake.

9

The State of California never endorsed, approved, or provided any legal protection for Gem Coins.

xii.   USFIA never deposited any gemstones with any federal or state government office.

xiii.   No independent appraisal to confirm the actual value of gemstones purportedly backing Gem Coins was ever sought or obtained by defendant CHEN.

xiv.   Defendant CHEN caused USFIA to purchase imitation turquoise rings, pendants, and other small inexpensive jewelry items to fill the plastic bins stacked beneath the banner that read "GEM COIN BACKED BY REAL ASSETS OUR PRECIOUS GEMSTONE" in the USFIA Arcadia Office, and to label each bin as having contents valued at $10 million, for a total value of more than $2 billion in gemstone jewelry that purportedly backed Gem Coin.   Defendant CHEN caused USFIA to purchase the items filling the bins from a vendor, New Sparkle Bead & Stone ("New Sparkle"), for less than $2 million.

xv.   Investors generally were unable to liquidate their USFIA investments for profit on trading platforms provided by USFIA.

xvi.   The number of USFIA Members was less than 1% of the 20 million claimed.

d.   To solicit investments in USFIA and induce Distributors to recruit more investors, defendant CHEN, together with other co-conspirators known and unknown to the United States Attorney, would:

i.   Prepare and make sales presentations and hand out USFIA promotional materials at the USFIA Arcadia Office and at numerous conferences, training sessions, beauty pageants, and other

1  events organized and hosted by USFIA in Los Angeles and San
2  Bernardino Counties, within the Central District of California, and
3  elsewhere, including San Diego, San Francisco, Las Vegas, New York,
4  Toronto, Beijing, Macau, Singapore, Bangkok, Bali, Taipei, Hanoi,
5  Dubai, and Kuala Lumpur.  These conferences often included ceremonies
6  in which Distributors selected by defendant CHEN would appear on
7  stage to receive bonuses and awards, including cash and luxury
8  automobiles, for recruiting investors.

9          ii.   Conduct conference calls on a weekly basis that
10 were made available to participating USFIA investors worldwide in
11 multiple languages, in which defendant CHEN and others promoted
12 investments in USFIA and answered investor questions regarding USFIA
13 and Gem Coin.

14         iii.  Register and maintain websites, including
15 usfiainc.com, alliancefinancialgroupusa.com, afgroupus.com,
16 gemcointhecurrency.com, ahappycity.com, and ammine.do (collectively
17 the "Chen Websites"), which displayed and linked to USFIA promotional
18 materials approved by defendant CHEN, and enabled investors to login,
19 via the "USFIA Back Office" portal, to view online the status and
20 purported values of their individual USFIA accounts.

21         iv.   Maintain email accounts to distribute USFIA
22 promotional materials and communicate with USFIA investors worldwide
23 in English, Chinese, Spanish, Japanese, Korean, and French.

24         v.    Establish and operate USFIA offices in foreign
25 countries, including USFIA Singapore, to solicit investments in USFIA
26 and collect investor payments.

27         e.    As a result of the false representations and promises,
28 and omissions and the concealments of material fact described above,

defendant CHEN and his co-conspirators would cause victim investors to send money to USFIA and other entities defendant CHEN controlled using interstate and international wire communications.

f.   To collect payments in excess of $66 million from investors who purchased Investment Packages using credit cards, defendant CHEN, together with other co-conspirators known and unknown to the United States Attorney, would use merchant credit card processing accounts maintained in the names of USFIA, Amkey, and Amauction at National Bank of California, Wells Fargo Bank, Bank of America (the "Merchant Bank Accounts").  Defendant CHEN would knowingly provide, and cause others to provide, materially false and misleading statements to these banks for the purpose of influencing them to process USFIA investor card payments through the Merchant Bank Accounts.

g.   To collect payments in excess of $80 million from investors who purchased Investment Packages using checks and wire transfers, defendant CHEN, together with other co-conspirators known and unknown to the United States Attorney, would cause those funds, together with investor funds processed through the Merchant Bank Accounts, to be deposited into USFIA, Amkey, Amauction, and Ahome bank accounts controlled by defendant CHEN, including the USFIA BoA Account and Ahome BoA Account.  Defendant CHEN, together with other co-conspirators known and unknown to the United States Attorney, would cause tens of millions of dollars of these investor funds to be transferred and disbursed to benefit themselves, their relatives, and other associates, including using such funds to purchase mansions, expensive automobiles and other luxury items, and to pay gambling and other personal expenses.

D.    OVERT ACTS

8.    On or about the following dates, in furtherance of the conspiracy and to accomplish its object, defendant CHEN, together with other co-conspirators known and unknown to the United States Attorney, committed and willfully caused others to commit the following overt acts, among others, in the Central District of California and elsewhere:

Overt Act No. 1:    On or about July 19, 2013, defendant CHEN caused the domain name "USFIAINC.COM" to be registered for use in hosting a website for USFIA.

Overt Act No. 2:    On or about August 14, 2013, defendant CHEN signed and issued checks to C.J., T.N., and M.S., which were drawn on the USFIA BoA Account, as compensation for their recruiting investors in USFIA.

Overt Act No. 3:    In or about September 2013, defendant CHEN caused promotional material with respect to USFIA, AFG, and UCCA to be prepared and distributed at the USFIA Arcadia Office and posted on the Chen Websites.

Overt Act No. 4:    On or about November 18, 2013, defendant CHEN met with C.K. and gave a presentation at the USFIA Arcadia Office to solicit C.K.'s investment in USFIA.

Overt Act No. 5:    On or about June 22, 2014, defendant CHEN gave a presentation at a USFIA conference held in Los Angeles County, California, soliciting investments in USFIA.

Overt Act No. 6:    On or about September 9, 2014, defendant CHEN held a press conference at the USFIA Arcadia Office and announced the official distribution of Gem Coins worldwide.

Overt Act No. 7:   On or about September 22, 2014, defendant CHEN gave a presentation at a USFIA conference held in Los Angeles County, California, to solicit investments in USFIA.

Overt Act No. 8:   On or about October 24, 2014, defendant CHEN caused USFIA investor funds in the amount of approximately $500,000, collected by USFIA Singapore, to be wire transferred from Singapore into the USFIA BoA Account.

Overt Act No. 9:   On or about March 22, 2015, defendant CHEN gave a presentation at a USFIA conference held in Los Angeles County, California, soliciting investments in USFIA.

Overt Act No. 10:   On or about May 30, 2015, defendant CHEN gave a presentation at a USFIA conference held in Los Angeles County, California, soliciting investments in USFIA.

Overt Act No. 11:   On or about July 3, 2015, defendant CHEN caused USFIA investor funds in the amount of approximately $350,000, collected by USFIA Singapore, to be wire transferred from Singapore into the USFIA BoA Account.

Overt Act No. 12:   On or about July 20, 2015, defendant CHEN signed and issued a check to New Sparkle in the amount of approximately $298,022, drawn on the USFIA BoA Account, to purchase jewelry manufactured in China.

Overt Act No. 13:   On or about August 30, 2015, defendant CHEN gave a presentation at a USFIA conference held in Los Angeles County, California, California, soliciting investments in USFIA.

Overt Act No. 14:   On or about September 2, 2015, defendant CHEN caused USFIA investor funds in the amount of approximately $200,000, collected by USFIA Singapore, to be wire transferred from Singapore into the USFIA BoA Account.

COUNT TWO

[26 U.S.C. § 7201]

9.     From at least in or about January 2014 through at least in or about September 2015, in Los Angeles County, within the Central District of California, and elsewhere, defendant STEVE CHEN, also known as "Li Chen" and "Boss," willfully attempted to evade and defeat the assessment and payment of the income tax due and owing by him and his spouse to the United States of America for calendar year 2014, by committing the following affirmative acts, among others:

a.     Causing to be prepared, and signing and causing to be signed, a false and fraudulent Amended United States Individual Income Tax Return, Form 1040X, which was submitted to the Internal Revenue Service.  On that tax return, defendant CHEN reported and caused to be reported that his and his spouse's joint taxable income for the calendar year 2014 was $109,815, that no amount of tax was due and owing, and that defendant CHEN and his spouse had overpaid and were owed a refund of $2,525.  In fact, as defendant CHEN then knew, defendant CHEN and his spouse had joint taxable income for the calendar year 2014 of approximately $4,941,808, and as a result of such additional taxable income, there was additional tax of approximately $1,885,094 (exclusive of interest and penalties) due and owing to the United States of America.

b.     Causing distributions of income that defendant CHEN received during calendar year 2014 from Ahome Real Estate LLC, a limited liability company for which defendant CHEN was Chief Executive Officer and member-manager, to be incorrectly classified on Ahome's 2014 General Ledger accounting records as "debits" against an Ahome "Loan from Investors" account.  In fact, as defendant CHEN then

knew, there were no loans from defendant CHEN, or any other Ahome investor, against which these Ahome disbursements for defendant CHEN's benefit properly could be debited.

NICOLA T. HANNA
United States Attorney

*Brandon Fox*

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

RANEE A. KATZENSTEIN
Assistant United States Attorney
Chief, Major Frauds Section

RICHARD E. ROBINSON
KATHERINE A. RYKKEN
Assistant United States Attorneys
Major Frauds Section